IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Doris S. Grant, ) | |
| ) | Civil Action No. 2:06-3242-CWH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| City of North Charleston Housing ) | |
| Authority and the Board of Commissioners ) | |
| of the Housing Authority of the City of ) | |
| North Charleston, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

On November 17, 2006, Doris S. Grant (the "plaintiff" or "Grant") commenced this action against the City of North Charleston Housing Authority and the Board of Commissioners of the Housing Authority of the City of North Charleston (collectively the "defendants") pursuant to the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.

**I.    Plaintiff's Allegations**

On October 22, 1984, the plaintiff began working for the City of North Charleston Housing Authority (the "Housing Authority) as a Tenant Service Coordinator. The plaintiff held several positions during her employment with the Housing Authority, including acting as the Housing Authority's Director of Housing Management and Department Head in Charge from October 1998 until May 2000. In that position, the plaintiff was responsible for the operations of the Housing Authority during the time that the Housing Authority did not have an Executive Director. In May of 2000, the plaintiff was promoted to the position of the Director of Housing

Management, and George Saldana ("Saldana") was hired as the Executive Director of the Housing Authority.  In March of 2004, the plaintiff was named Director of Housing Management and Director of Assisted Housing Programs.

The events leading to the present action are related to two claims of age discrimination filed pursuant to the ADEA by Walter E. Jaudon, Jr. ("Jaudon").  On May 21, 2003, Jaudon, an employee of the Housing Authority, filed a complaint with the South Carolina Human Affairs Commission alleging age discrimination.  On October 19, 2004, Jaudon filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, race discrimination and retaliation.  On November 18, 2004, after receiving a right to sue letter, Jaudon filed an action in the United States District Court, Charleston Division, against Saldana and the Board of Commissioners of the Housing Authority.[1]  Jaudon listed the plaintiff as a witness in his employment discrimination case.

On February 8, 2005, Jaudon sent an e-mail to the plaintiff's work e-mail address at the Housing Authority.  The e-mail was addressed to the plaintiff and the subject line said: "your boy need [sic] to get this one:

Sal need to get this one . . . . . . . . . .

Management Lesson –

>(1) Not everyone who sh\*\*s on you is your enemy.

>(2) Not everyone who gets you out of sh\*\* is your friend.

**>(3) And when you're in deep sh\*t, it's best to keep your mouth shut!**

Walter

---

[1] The case number is 2:05-3050-DCN-GCK.

(Defs.' Ex. C) (boldface and font size in original).

According to Grant, "Sal" referred to George Saldana, the Executive Director of the Housing Authority. On February 9, 2005, Grant replied to Jaudon's email:

Subject: Re: your boy need to get this one/No this one!!

I think this would apply to him best:

Finally after a fourth night, the turkey was proudly perched at the top of the tree.

He was promptly spotted by a farmer, who shot him out of the tree.

<u>Management Lesson</u> – **Bull Sh\*\* might get you to the top, but it won't keep you there!!!**

**Doris**

(Defs.' Exhibit C) (italics and boldface in original).

On February 22, 2005, Jaudon sent the plaintiff another e-mail at her work e-mail address:

Subject: "To Do List."

**Write memos that pertain to:**

**1. Staff layoff (conversation with them concerning Saldana).**

**2. Hickman situation**

**3. Hamilton situation**

**4. Also communicate any reservations you may have about the entire housing situation occurring now that make [sic] you feel uncomfortable.**

**A. Be sure to include names, dates, time and place.**

> **B. Mail at lease [sic] two (2) copies to yourself CERTIFIED.**
>
> **C. Once you receive the letters, secure them, UNOPENED!**
>
> **Walter Jaudon**
>
> **P.S.**
>
> **I was told this morning HUD knows about the Hickman situation.**
>
> **Mariiyn [sic] is also aware.**
>
> **She would like to act on the situation.**
>
> **I think Larry and Dudley are the hold up at this point.**

(Defs.' Ex. E). The plaintiff testified that she did not pay any attention to Jaudon's February 22, 2005 e-mail when she received it and that she did not respond to it. She also swore that she did not discuss staff layoffs, the Hickman situation, or the Hamilton situation with Jaudon.

On July 7, 2005, Saldana, the Executive Director of the Housing Authority, confronted the plaintiff regarding the aforementioned emails. Saldana believed that the emails indicated that she was sharing confidential information with Jaudon, a former employee. During the confrontation, the plaintiff told Saldana that she did not trust him. Saldana gave the plaintiff the option of either resigning or being terminated. On July 7, 2005, the plaintiff was terminated.

On July 14, 2005, the plaintiff requested a grievance hearing before the Board of Commissioners. On August 3, 2005, the plaintiff submitted a "Statement of Complaint Regarding Termination" to the Board of Commissioners in support of her grievance. On January 10, 2006, the Board of Commissioners held a special meeting at which it unanimously passed a motion "to uphold the actions of the Executive Director in the Doris Grant review." (Defs.' Ex. L).

On April 5, 2006, the plaintiff filed a Charge of Discrimination with the EEOC, based solely on retaliation pursuant to Title VII. On August 31, 2007, after investigating the plaintiff's claim, the EEOC issued a Dismissal and Notice of Rights letter to the plaintiff, informing her that the EEOC was unable to conclude that the information obtained established violations of the statutes. Thereafter, the plaintiff commenced this action.

## II.     Procedural History

On November 17, 2006, the plaintiff commenced this action against the defendants alleging race discrimination, wrongful termination, retaliation, and age discrimination. The plaintiff alleges that Saldana terminated her because Jaudon listed the plaintiff as a witness in his suit. Furthermore, the plaintiff claims that she was terminated because Saldana thought that she was helping Jaudon with one or more of his discrimination claims against the Housing Authority and that she had supplied information to Jaudon regarding his EEOC case. On December 15, 2006, the defendants answered the complaint. On August 20, 2007, the case was mediated and the parties appeared to make progress towards resolution. On September 13, 2007, the defendants moved for summary judgment as to all claims. On October 18, 2007, the plaintiff responded in opposition to the motion for summary judgment. On November 8, 2007, the defendants replied to the response in opposition to the motion for summary judgment. On August 21, 2008, Magistrate Judge George C. Kosko ("Magistrate Judge Kosko") issued a report analyzing the issues and recommending that the Court grant the defendants' motion for summary judgment. On September 8, 2008, the plaintiff objected to the report and recommendation. On September 12, 2008, the defendants replied to the plaintiff's objection to the report and recommendation.

This Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which a specific objection is made.  *See* 28 U.S.C. § 636. The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions.  Matthews v. Weber, 423 U.S. 261, 270-71 (1976).  The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings.  Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).  The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions.  *See* 28 U.S.C.§ 636(b)(1).

The Court does not need to conduct a *de novo* review "when a party makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The plaintiff's objections, which are discussed below, are not the type of objections contemplated by the Federal Rules of Civil Procedure because the plaintiff makes general and conclusory objections that do not direct the Court to a specific error in the magistrate judge's report and recommendation.  Nevertheless, despite the plaintiff's failure to make specific objections, the Court will consider the merits of her objections.

### III.    Standard for Deciding a Motion for Summary Judgment

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no

genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 247, 248 (1986).  An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant.  <u>Id</u>. at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

## IV.     Plaintiff's Objections

The plaintiff asserts that Magistrate Judge Kosko erred in his report and recommendation by finding that the plaintiff should have brought her cause of action for wrongful termination and retaliation under the ADEA instead of Title VII.[2]  In the objections to the report and recommendation, the plaintiff again asserts that she was discharged because Saldana believed that she assisted with Jaudon's EEOC charges of discrimination.  Jaudon's EEOC charges of discrimination alleged age discrimination and were brought pursuant to the ADEA.  In the objections, the plaintiff cites the recent Supreme Court case of <u>CBOCS West v. Humphries</u> ("<u>Humphries</u>") to support her argument that Title VII and the ADEA provide overlapping remedies against discrimination.  128 S.Ct. 1951 (2008).  Nevertheless, <u>Humphries</u> involved a lawsuit brought by an employee pursuant to Title VII and 42 U.S.C. § 1981 and does not apply

---

[2] The plaintiff did not object to Magistrate Judge Kosko's recommendation that the plaintiff's age claim be dismissed because she failed to allege an age claim in her administrative filing and failed to address the defendants' arguments in their motion for summary judgment regarding her cause of action for age discrimination.

in the instant situation. In Zombro v. Baltimore City Police Department, the Fourth Circuit held that "the ADEA provides the exclusive judicial remedy for claims of age discrimination." 868 F.2d 1364, 1369 (4th Cir. 1989). Therefore, Title VII and the ADEA do not provide overlapping remedies against age discrimination.

An overview of the language in Title VII and the ADEA reveals that the statutes were enacted for different purposes. "Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). Title VII's retaliation provision, 42 U.S.C. § 2000e-3(a), provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

On the other hand, the ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Furthermore, the ADEA's retaliation provision, 29 U.S.C. § 623(d) states:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

The plaintiff's claim is not cognizable under Title VII, because Title VII does not forbid employment discrimination based on an individual's age or provide a remedy for such discrimination. Instead, the plaintiff's claim should have been brought pursuant to the ADEA, which has a retaliation provision that prohibits the alleged behavior. Therefore, the plaintiff's objection is without merit.

As previously mentioned, the plaintiff did not object to Magistrate Judge Kosko's findings about her age discrimination claim. Furthermore, the plaintiff did not object to the magistrate judge's findings about the race discrimination or the 42 U.S.C. § 1981 claims. This Court has reviewed the entire record and agrees with Magistrate Judge Kosko's conclusions. For the reasons stated above, the Court adopts the report and recommendation and grants the defendants' motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

September 22, 2008
Charleston, South Carolina